**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 29 2014, 10:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JESUS MALDONADO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1307-CR-333 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1201-FB-5

**January 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After appellant-defendant Jesus Maldonado pleaded guilty to Stalking,[1] a class B felony, he challenges the appropriateness of the twenty-year sentence that the trial court imposed. In light of Maldonado's lengthy juvenile and adult criminal history, the threats that he made against the victim, the fact that he entered her residence when she was gone and hid under a pile of clothing with a loaded gun and waited for her to return, and his numerous violations of a restraining order that the victim had against him, we conclude that the sentence was not inappropriate when considering the nature of the offense and Maldonado's character.

## FACTS

Maldonado and the victim, Rebekah, were married in 2010. However, at some point, dissolution proceedings commenced, and Maldonado began harassing Rebekah. As a result, Rebekah obtained a restraining order against Maldonado in September 2011. Despite the restraining order, Maldonado continued to attempt to contact Rebekah. For instance, Maldonado left thirty-seven voice mails and twelve text messages on her phone. He also sent Rebekah several Facebook messages. In one of those messages, Maldonado stated that if he could not be with Rebekah, "then nobody would." Appellant's App. p. 46.

On January 18, 2012, Rebekah contacted the Hobart Police Department and gave the officers permission to search her residence because she believed that Maldonado

---

[1] Ind. Code § 35-45-10-5.

2

might be inside. Rebekah obtained information that someone had dropped off Maldonado in front of her house, and Rebekah believed that her son might be inside.

During the search, Maldonado was eventually discovered hiding beneath a pile of Rebekah's clothes. Maldonado refused to show the police his hands and reached for his belt. Maldonado then told the officers, "shoot me or I will shoot you." Appellant's App. p. 46. The officers restrained Maldonado and pulled a semi-automatic handgun from his waist that had a bullet in the chamber. Rebekah identified the gun as hers that remained hidden and unloaded under her mattress. Rebekah kept the magazine in another location in her bedroom.

As a result of the incident, the State charged Maldonado with stalking, burglary, intimidation, residential entry, and serious violent felon in possession of a firearm. Thereafter, pursuant to a plea agreement, Maldonado pleaded guilty to stalking in exchange for the dismissal of the remaining charges.

At the sentencing hearing that was conducted on June 4, 2013, the trial court identified Maldonado's criminal history as an aggravating factor. The trial court found that Maldonado had amassed four juvenile adjudications, seven misdemeanors, and four felony convictions. The trial court also observed that Maldonado's probation had been revoked on two occasions.

In light of the circumstances and nature of the crime, the trial court also found that Maldonado's numerous violations of the restraining order, the fact that Maldonado was hiding under a pile of Rebekah's clothing with a loaded handgun, and the fact that the

3

gun belonged to Rebekah and Maldonado had searched her bedroom and found it, were also identified as aggravating circumstances.

The trial court did not identify Maldonado's decision to plead guilty a significant mitigating factor because "the defendant was apprehended while hiding in the victim's home[,] and the evidence favoring conviction was overwhelming had the case gone to trial." Appellant's App. p. 49. The trial court then determined that the aggravating factors outweighed the mitigating factors and sentenced Maldonado to twenty years. Maldonado now appeals.

## DISCUSSION AND DECISION

We will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The defendant has the burden of demonstrating that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Regarding the nature of the offense, Maldonado pleaded guilty to stalking, a class B felony, and received the maximum twenty-year sentence. Tr. p. 16, 31-32.[2] As the trial court determined, Maldonado is among the "worst of the worst" among stalking offenders. Tr. p. 37. More specifically, the evidence established that Rebekah obtained a restraining order against Maldonado during the dissolution proceedings. Appellant's App. p. 47. Maldonado violated the provisions of the restraining order and filled

[2] The sentencing range for a class B felony is between six and twenty years, with a ten-year advisory sentence. Ind. Code § 35-50-2-5.

4

Rebekah's phone and Facebook account with messages. Id. As noted above, in one of those messages, Maldonado told Rebekah that if he could not be with her, "then nobody would." Id. at 46.

Rebekah was horrified when she realized that Maldonado was in her house, hiding under a pile of clothes, and carrying the loaded handgun that she had kept in her bedroom. Id. at 46. Maldonado then invited the officers to shoot him, saying "shoot me or I will shoot you." Id. In short, Maldonado's nature of the offense argument avails him of nothing.

As for Maldonado's character, the trial court pointed out that he has lengthy juvenile and adult criminal histories that date back to 1987. As discussed above, Maldonado was adjudicated a delinquent with regard to four offenses, and he accumulated four felony convictions and seven misdemeanor convictions. Appellant's App. p. 58-62. A defendant's criminal history is relevant to assess his or her character. See Bailey v. State, 979 N.E.2d 133, 143 (Ind. 2012). (observing that Bailey's lengthy criminal history that included eleven prior adult convictions justified the imposition of an enhanced sentence). Also, as noted above, the evidence demonstrated that Maldonado violated his probation on two occasions. Appellant's App. p. 60-61.

In addition to Maldonado's lengthy criminal history, his general disdain for the law and authority demonstrates his poor character. For instance, evidence was presented that Maldonado slapped and punched teachers while he was in school and has been a member of a gang since he was thirteen years old. Id. at 64. Maldonado has a long

history of drug abuse and was using cocaine and heroin on a daily basis. Id. at 66. Maldonado also has four children with two different women, and owes more than $64,000 in child support.

In light of our discussion above, it is apparent that Maldonado's prior criminal convictions and behavior establish his disrespect for the law. Maldonado has engaged in a continuous pattern of committing crimes and he has not reformed his criminal behavior. In short, Maldonado has learned nothing from his prior encounters with the criminal justice system, and has failed to show that the twenty-year sentence was inappropriate.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.